## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

|                                       |     |                                |
|---------------------------------------|-----|--------------------------------|
| UNITED STATES OF AMERICA,             | )   |                                |
|                                       | )   |                                |
| Plaintiff,                            | )   |                                |
|                                       | )   | Case No. 3:24-cv-00830-DRL-SJF |
| v.                                    | )   |                                |
|                                       | )   |                                |
| CITY OF SOUTH BEND, INDIANA,          | )   |                                |
|                                       | )   |                                |
| Defendant.                            | )   |                                |

## ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

The Defendant, City of South Bend, Indiana submits the following answer and affirmative defenses to Plaintiff, United States of America's ("Plaintiff") Complaint, as stated below.

## COMPLAINT

1. The United States brings this civil action to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), with respect to race and sex discrimination.

**ANSWER:** The City admits that Plaintiff purports to assert claims under Title VII of the Civil Rights Act of 1964. The City denies that it engaged in conduct that violated Title VII and that Plaintiff's claims have any merit. The City further denies any remaining allegations in this Paragraph.

2. As detailed below, the United States alleges that the City of South Bend, Indiana ("South Bend"), through the South Bend Police Department ("SBPD")

(collectively referred to as "Defendant"), has used and continues to use a written test and physical fitness test ("PFT") to screen and select applicants for police officer positions at SBPD. From at least 2016 to the present, Defendant has used a written test that disproportionately excludes African-American applicants and a PFT that disproportionately excludes female applicants. Defendant's use of these tests is not job related or consistent with business necessity. Defendant has therefore violated Title VII by engaging in a pattern or practice of employment discrimination against African-American and female applicants in its police officer selection procedures.

**ANSWER:** The City admits that the South Bend Police Department ("SBPD") uses a written test and a physical fitness test ("PFT"), among other appropriate measures, to screen and select applicants for police officer positions at the SBPD. The City denies that it engaged in conduct that violated Title VII. The City denies the remaining allegations of Paragraph 2.


## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

**ANSWER:** The City admits that Plaintiff alleges a discrimination claim under Title VII of the Civil Rights Act of 1964, which confers federal jurisdiction, and thus, admits this Court has jurisdiction over this action.


4.    Venue is proper in the United States District Court for the Northern District of Indiana under 28 U.S.C. § 1391 because Defendant is located in this

judicial district and because all or a substantial part of the acts or omissions giving rise to this cause of action took place in this judicial district.

**ANSWER:** The City admits venue is appropriate in the United States District Court for the Northern District of Indiana. The City denies that the allegations outlined in Plaintiff's Complaint give rise to valid claims against the City.

## PARTIES

5.    Plaintiff is the United States of America.

**ANSWER:** The City admits the allegations in Paragraph 5.


6.    South Bend is a governmental entity and/or political subdivision created pursuant to the laws of the state of Indiana.

**ANSWER:** The allegations in Paragraph 6 call for legal conclusions to which no response is required.


7.    South Bend is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

**ANSWER:** The allegations in Paragraph 7 call for legal conclusions to which no response is required.


8.    The United States, through the United States Department of Justice, has investigated Defendant's policies and practices in selecting police officers as they affect African-American and female applicants. The United States has notified

Defendant of that investigation and of its determination that the policies and practices outlined in this Complaint are unlawful.

**ANSWER:** The City admits that Plaintiff notified the City about an investigation regarding the SBPD, under which Plaintiff sought information about SBPD's hiring policies and practices. The City lacks sufficient information or knowledge to form a belief as to the truth of Plaintiff's intent or analysis regarding the SBPD's hiring and selection process and impact on African American and female applicants, and therefore, the City denies those allegations. The City further denies the Plaintiff's alleged determination and all remaining allegations in Paragraph 8.

## FACTUAL ALLEGATIONS

A.    SBPD's Police Officer Selection Process

9.    Defendant maintains the SBPD and, through it, employs police officers who, among other things, are responsible for protecting individuals and property in the City of South Bend. The job duties and responsibilities of SBPD police officers include, but are not limited to, patrolling on foot or by vehicle, responding to assigned calls, and searching for suspicious activity or situations; assessing situations, determining the need for assistance of other officers or agencies, and taking appropriate action; providing emergency aid to injured people and moving people away from danger; investigating accidents and reports of crimes; pursuing and apprehending suspects; and testifying in court and preparing for such testimony by reviewing reports and notes.

**ANSWER:**  The City admits that the SBPD employs police officers who work to protect the life, property, and personal liberties of all individuals. The City denies that the allegations in Paragraph 9 include the full scope of job duties and responsibilities of SBPD police officers, and the City denies any remaining allegations in Paragraph 9.

10.    Defendant is responsible for the recruitment and hiring of SBPD police officers.

**ANSWER:**  The City admits that by and through the SBPD and Board of Public Safety, the City oversees the recruitment and hiring of employees at the SBPD, including police officers. The City denies the remaining allegations in Paragraph 10.

11.    Defendant is responsible for establishing the terms, conditions, and other practices that bear upon the selection and employment of SBPD police officers.

**ANSWER:**  The City denies the allegations in Paragraph 11.

12.    Since at least 2016, Defendant has used a multi-step process to select SBPD police officers. Among other screening devices, this multi-step selection process includes a written test and PFT.

**ANSWER:**  The City admits that the SBPD has used a multi-step process, which includes a written test and a PFT, among other appropriate measures, to

5

screen and select applicants for police officer positions at the SBPD. The City denies the remaining allegations in Paragraph 12.

13.    At the start of the selection process, Defendant screens all applicants. Those who fail to meet a set of minimum qualifications are disqualified and are not hired as SBPD police officers.

**ANSWER:**  The City admits that the SBPD conducts an initial screen of applicants for police officer positions using a set of minimum qualifications for employment. The City denies the remaining allegations in Paragraph 13.

14.    Applicants who meet the minimum qualifications must successfully pass a PFT to advance further in the selection process. Applicants who do not pass the PFT are disqualified and are not hired as SBPD police officers.

**ANSWER:**  The City admits that applicants for police officer positions must meet the minimum qualifications for employment and ultimately pass a PFT to advance in the selection process. Candidates are provided more than one opportunity to take the PFT. The City denies the remaining allegations in Paragraph 14.

15.    Applicants who pass the PFT must then successfully obtain a passing score on a written test. Applicants who do not pass the written test are disqualified and are not hired as SBPD police officers.

**ANSWER:**   The City admits that applicants for police officer positions must ultimately pass a PFT and obtain a passing score on a written test to advance in the selection process. Candidates are provided more than one opportunity to take the PFT and the written test. The City denies the remaining allegations in Paragraph 14.

B.      CMPD's [*sic*] Physical Fitness Test[1]

16.      Since at least 2016, Defendant has used a PFT to screen candidates for SBPD police officer positions. The PFT is a pass/fail component of the selection process. Only individuals who pass the PFT may continue in the selection process.

**ANSWER:**   The City admits that the SBPD uses a PFT to screen police officer candidates for hiring and that candidates must ultimately pass the PFT. Candidates are provided more than one opportunity to take the PFT. The City denies any remaining allegations in Paragraph 16.

17.      The PFT requires applicants to perform six activities, including a vertical jump, sit-ups, 300-meter run, push-ups, 1.5-mile run, and a pistol trigger pull. To pass the PFT, candidates must meet specific standards for each of the six PFT components.

---

[1] Plaintiff uses the phrase "CMPD Physical Fitness Test" to introduce Paragraphs 16-24 of Plaintiff's Complaint; The City assumes that the reference to CMPD is a scrivener's error and submits its answers as if the Plaintiff intended to state "SBPD Physical Fitness Test."

**ANSWER:** The City admits that it requires applicants for police officer positions to perform a PFT consisting of six activities and meet the specific standards set for each activity as established by the Indiana Law Enforcement Academy ("ILEA") under Indiana Code § 5-2-1-9. The City denies any remaining allegations in Paragraph 17.

18.    Since at least 2016, female applicants have passed the PFT at a lower rate than male applicants.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief about the truth of the underlying data or methodology upon which Plaintiff relies for its alleged conclusions in Paragraph 18 and, therefore, denies those allegations.

19.    From 2016 through August 2019, approximately 87.6 percent of male test-takers passed the PFT, while approximately 45.5 percent of female test-takers passed. During this period, the difference between the pass rates of female and male applicants on the PFT is statistically significant at greater than three units of standard deviation.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief about the truth of the underlying data or methodology upon which Plaintiff relies for its alleged statistical conclusions in Paragraph 19, and the City denies the allegations in Paragraph 19.

20.    In or around August 2019, Defendant, while still requiring applicants to perform the same six activities on the PFT, lowered the passing standards. Since that time, female applicants have continued to pass the PFT at a lower rate than male applicants.

**ANSWER:**  The City admits that, in 2019, the SBPD adjusted the PFT passing standards to be consistent with the ILEA's minimum entrance standards, as established by the ILEA under Indiana Code § 5-2-1-9. The City lacks knowledge or information sufficient to form a belief about the truth of the underlying data or methodology upon which Plaintiff relies for its alleged conclusions in Paragraph 20 and, therefore, denies those allegations.

21.    Since August 2019, approximately 83.8 percent of male test-takers passed the PFT, while approximately 47.4 percent of female test-takers passed. During this period, the difference between the pass rates of female and male applicants on the PFT is statistically significant at greater than three units of standard deviation.

**ANSWER:**  The City lacks knowledge or information sufficient to form a belief about the truth of the underlying data or methodology upon which Plaintiff relies for its alleged statistical conclusions in Paragraph 21, and the City denies the allegations in Paragraph 21.

22.     Since at least 2016, the PFT and Defendant's method of use of the PFT has not been job related or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

**ANSWER:**   The City denies the allegations in Paragraph 22.


23.     Even if Defendant could demonstrate that its use of the PFT is job related and consistent with business necessity, there are alternative selection procedures that it could have used that would have resulted in less adverse impact against female applicants and still served Defendant's legitimate needs.

**ANSWER:**   The City denies the allegations in Paragraph 23.


24.     As a result of Defendant's use of the PFT, Defendant has hired fewer female applicants as SBPD police officers since at least 2016 than it otherwise would have had it used a nondiscriminatory screening device.

**ANSWER:**   The City denies the allegations in Paragraph 24.


C.     SBPD's Written Test

25.     Since at least 2016, Defendant has used a written test developed by Testing for Public Safety, LLC, formerly known as the Institute for Public Safety Personnel, Inc.

**ANSWER:**   The City admits that the SBPD has used written examinations developed, prepared, and administered through Testing for Public Safety, LLC,

formerly known as the Institute for Public Safety Personnel, Inc. The City denies any inference that a single written test has been used, and states further that the SBPD has used multiple versions of a written examination developed by Testing for Public Safety LLC. The City denies the remaining allegations in Paragraph 25.

26.    The written test includes 120-130 multiple choice questions broken down into seven sections: (1) Learn and Apply Knowledge; (2) Observe and Accurately Describe Events and Objects; (3) Remember Identifying Information; and (4) Remember Shapes and Spatial Relationships; (5) Complete Routine Forms; (6) Grammar; and (7) Spelling.

**ANSWER:**  The City admits that each written test administered to SBPD police officer applicants evaluates a candidate's capabilities in seven general sections, which are closely related but not identical to the allegations in Paragraph 26; and further, that such examinations have generally included between 120-130 questions. The City denies the remaining allegations in Paragraph 26.

27.    Until 2017, applicants had to score at least 82 percent to pass the written test and advance to the next step in Defendant's selection process.

**ANSWER:**  The City admits that applicants for a police officer position with the SBPD had to achieve a minimum passing score of 82 percent on the written test until in or around 2017. The City denies the remaining allegations in Paragraph 27.

28.    Since in or around 2017, the test components have remained the same but the minimum passing score was lowered to 80 percent.

**ANSWER:**    The City admits that the general components of the written test have remained substantially the same; however, the SBPD adjusted its minimum passing score to 80 percent in or around 2017. The City denies the remaining allegations in Paragraph 28.

29.    Since at least 2016, African-American applicants have passed the written test at a lower rate than white applicants. Approximately 84.1 percent of white test-takers passed the written test, while approximately 62.8 percent of African-American test-takers passed.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief about the truth of the underlying data or methodology upon which Plaintiff relies for its alleged conclusions in Paragraph 29 and, therefore, denies those allegations.

30.    Since at least 2016, the difference between the pass rates of African-American and white applicants on the written test was statistically significant at greater than three units of standard deviation.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief about the truth of the underlying data or methodology upon which Plaintiff relies for its alleged statistical conclusions in Paragraph 30, and the City denies the allegations in Paragraph 30.

31.     Since at least 2016, the written test and Defendant's method of use of the written test has not been job related or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

**ANSWER:**   The City denies the allegations in Paragraph 31.


32.     Even if Defendant could demonstrate that its use of the written test is job related and consistent with business necessity, there are alternative selection procedures that it could have used that would have resulted in less adverse impact against African-American applicants and still served Defendant's legitimate needs.

**ANSWER:**   The City denies the allegations in Paragraph 32.


33.     As a result of Defendant's use of the written test, Defendant has hired fewer African-American applicants as SBPD police officers since at least 2016 than it otherwise would have had it used a nondiscriminatory screening device.

**ANSWER:**   The City denies the allegations in Paragraph 33.


## UNITED STATES' PATTERN OR PRACTICE CLAIMS

### COUNT ONE
### Title VII. 42 U.S.C. § 2000e-2(a)
### Use of the Physical Fitness Test

34.     Plaintiff United States re-alleges and incorporates by reference paragraphs 1 through 33.

**ANSWER:**   The City incorporates its answers to all previous allegations as if fully set forth herein.

35.     Since at least 2016, Defendant's use of the PFT in its selection process has caused a disparate impact on female applicants on the basis of sex, is not job related for the position in question, is not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

**ANSWER:**   The City denies the allegations in Paragraph 35.

36.     Even if Defendant could show that its use of the PFT was job related and consistent with business necessity, Defendant has not met the requirements of 42 U.S.C. § 2000e-2(k) because there were alternative selection procedures that it could have used that would have resulted in less adverse impact against female applicants and still served SBPD's legitimate needs.

**ANSWER:**   The City denies the allegations in Paragraph 36.

37.     Defendant's policies and practices outlined in paragraphs 9 through 24 constitute a pattern or practice of discrimination against women in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). Under Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States brings this civil action requesting relief.

**ANSWER:**   The City denies the allegations in Paragraph 37.

COUNT TWO
Title VII, 42 U.S.C. § 2000e-2(a)
Use of the Written Test

38.    Plaintiff United States re-alleges and incorporates by reference paragraphs 1 through 37.

**ANSWER:**  The City incorporates its answers to all previous allegations as if fully set forth herein.

39.    Since at least 2016, Defendant's use of the written test in its selection process has caused a disparate impact on African-American applicants on the basis of race, is not job related for the position in question, is not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

**ANSWER:**  The City denies the allegations in Paragraph 39.

40.    Even if Defendant could show that its use of the written test was job related and consistent with business necessity, Defendant has not met the requirements of 42 U.S.C. § 2000e-2(k) because there were alternative selection procedures that it could have used that would have resulted in less adverse impact against African-American applicants and still served SBPD's legitimate needs.

**ANSWER:**  The City denies the allegations in Paragraph 40.

41.    Defendant's policies and practices outlined in paragraphs 9 through 15 and 25 through 33 constitute a pattern or practice of discrimination against African

Americans in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). Under Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States brings this civil action requesting relief.

**ANSWER:**  The City denies the allegations in Paragraph 41.


## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court order Defendant South Bend, and its officers, agents, employees, successors, and all persons in active concert or participation with them, including SBPD, to:

a. refrain from using a written test to screen and select applicants for SBPD police officer positions where such use results in a disparate impact on African Americans, is not job related for the police officer position and consistent with business necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

b. refrain from using a physical fitness test to screen and select applicants for SBPD police officer positions where such use results in a disparate impact on women, is not job related for the police officer position and consistent with business necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c. provide make whole remedial relief to all persons who have been harmed by the discrimination alleged in this Complaint; and

    d.   adopt other appropriate nondiscriminatory measures to correct the present effects of its discriminatory policies and practices, including use of police officer selection procedures that comply with Title VII.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

    **ANSWER:**  The City denies that Plaintiff is entitled to any relief whatsoever. The City requests that Plaintiff take nothing by way of its Complaint, that the Court enter judgment in favor of the City and against Plaintiff on all of Plaintiff's claims, and that the Court award the City fees, costs, expenses, and all other just and proper relief.

## GENERAL DENIAL

The City denies all allegations in this Complaint to which the City has not specifically admitted to be true.

## DEMAND FOR JURY TRIAL

The City hereby demands a trial by jury for all of the issues herein so triable.

## AFFIRMATIVE DEFENSES

Without assuming any burden of production or proof that would otherwise be Plaintiff's burden, The City asserts that Plaintiff's claims fail, in whole or in part, due to the following defenses.

    1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.      Some or part of Plaintiff's claims may be barred by the equitable doctrines of estoppel or laches.

3.      Some or part of Plaintiff's claims may be barred by the applicable statute of limitations.

4.      Plaintiff's claims fail because Defendant's policies and procedures applied by the SBPD are required under Indiana state law.

5.      Plaintiff's claims fail because the physical fitness examination requirements administered by the SBPD complied with and continue to comply with position prerequisites, as determined by Indiana state law.

6.      Plaintiff's claims fail because the SBPD's physical fitness examination requirements were established by the Indiana Law Enforcement Training Board, which is selected by the Governor of the State of Indiana to adopt the minimum physical fitness requirements for police officers within Indiana.

7.      Plaintiff's claims fail because the SBPD has relied and continues to rely in good faith upon its third-party written examination provider to validate its written examination and ensure compliance with federal and state law.

8.      Plaintiff's claims fail because the SBPD gave and acted upon the results of a professionally developed ability test without designing, intending, or using that test's administration or action upon the result to discriminate because of race or sex.

9.      Plaintiff's claims fail because the PFT and written examinations administered by the SBPD are job-related and consistent with business necessity.

10.    Plaintiff's claims fail because it would be an unlawful employment practice for SBPD, in connection with the selection or referral of applicants or candidates for employment, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, or sex—even if other factors also motivated the practice.

11.    Plaintiff's claim fail because they would require an employer to discriminate based on race without narrowly tailoring to further a compelling governmental interest, and would require an employer to discriminate based on sex without substantially furthering a legitimate governmental interest, in violation of the Equal Protection Clause of the United States Constitution.

12.    The City, by and through the SBPD, has acted and continues to act in good faith and had reasonable grounds for believing its actions do not violate Title VII of the Civil Rights Act of 1964, or any other applicable law.

13.    Plaintiff's claims fail because there is no alternative selection procedures that the SBPD could have used that would have resulted in less adverse impact.

14.    Plaintiff's claims fail because it relies on statistically insufficient data, including an insufficient statistical sample on which to base any reliable, statistically significant determinations.

## <u>RESERVATION OF DEFENSES</u>

The City's investigation is ongoing, and it intends to rely upon such other affirmative defenses as may become available or apparent during the course of investigation, discovery, or trial. The City reserves the right to amend this Answer to assert such other defenses to which it may be entitled.

WHEREFORE, The City denies that Plaintiff is entitled to relief, requests that the Court dismiss with prejudice all claims against the City, requests the Court to enter judgment in favor of the City, and order all other appropriate relief.


Dated: January 6, 2025                          Respectfully submitted:

                                                /s/ Erin Linder Hanig
                                                John A. Conway (27712-71)
                                                Erin Linder Hanig (29113-71)
                                                Paul Edgar Harold (25917-71)
                                                Tiernan B. Kane (36452-71)
                                                SOUTHBANK LEGAL
                                                100 E. Wayne Street, Suite 300
                                                South Bend, IN 46601
                                                Telephone: (574) 968-0760
                                                Facsimile: (574) 968-0761
                                                jconway@southbank.legal
                                                ehanig@southbank.legal
                                                pharold@southbank.legal
                                                tkane@southbank.legal


                                                *Counsel for Defendant*
                                                *City of South Bend, Indiana*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's CM/ECF system on January 6, 2025.

By: <u>/s/ Erin Linder Hanig</u>
Erin Linder Hanig